## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORNELL HESTER, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 13-812-LPS |
| | : | |
| DAVID PIERCE, Warden, and ATTORNEY | : | |
| GENERAL OF THE STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

Cornell Hester. *Pro se* Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

## MEMORANDUM OPINION

September 28, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28

U.S.C. Section 2254 ("Petition") filed by Petitioner Cornell Hester ("Petitioner"). (D.I. 1; D.I. 17)

For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I.  BACKGROUND

As set forth by the Delaware Supreme Court in Petitioner's direct appeal, the facts leading to

Petitioner's arrest and conviction are as follows:

> On December 16, 2009, Valerie Wilkins was home alone. At about
> 8:00 p.m., she heard a knock at the door and found [Petitioner], her
> ex-boyfriend, on her doorstep. [Petitioner] asked her to open the
> door. Wilkins told [Petitioner] that if he did not leave, she would call
> the police. Wilkins then called her mother and told her that
> [Petitioner] was at the door. As she retreated upstairs, [Petitioner]
> kicked in the front door and chased her. Wilkins attempted to hide
> in her daughter's room. [Petitioner] broke through the bedroom
> door and grabbed Wilkins by the shirt, demanding her mobile phone,
> which she had dropped as she was fleeing upstairs. [Petitioner] took
> Wilkins room to room with him in search of the mobile phone,
> which was ringing. After finding the phone on the stairs, Wilkins
> pleaded with [Petitioner] to leave because her children would be
> returning home from church soon. [Petitioner] eventually allowed
> Wilkins to answer her mobile phone and speak with her daughter.
> Wilkins' mother and step-father arrived at her house a short while
> later along with Wilkins' three children.  [Petitioner] fled.

*Hester v. State*, 27 A.3d 551 (Table), 2011 WL 3717051, at *1 (Del. 2011).

On February 1, 2010, Petitioner was indicted on one count of first degree burglary, one

count of aggravated menacing, one count of offensive touching, one count of harassment, two

counts of criminal mischief, one count of second degree unlawful imprisonment, and one count of

malicious interference with emergency communications.  (D.I. 54, App. to Appellant's Br. Under

Rule 26(c) in *Hester v. State*, No. 587, 2010, at A7-A9)  On May 11, 2010, Petitioner filed a motion

seeking to dismiss his court-appointed counsel and asking for new counsel to be appointed; he

withdrew that motion at his final case review on May 24, 2010. *See Hester*, 2011 WL 3717051, at *2. The case proceeded to trial on June 2, 2010. *Id.* During a trial recess, Petitioner informed the trial court that he had filed a federal lawsuit against his defense counsel and the public defender's office, and he moved to dismiss defense counsel. The trial judge denied the motion. *Id.*

In June 2010, a Superior Court jury acquitted Petitioner on the charge of aggravated menacing, but convicted him of second degree burglary (lesser included offense of first degree burglary), second degree unlawful imprisonment, harassment, two counts of criminal mischief, and malicious interference with emergency communications. *See State v. Hester*, 2012 WL 5364690, at *1 (Del. Super. Ct. Oct. 9, 2012). The Superior Court sentenced him on September 10, 2010 as a habitual offender to a total period of fourteen years and nine months at Level V incarceration, to be suspended after twelve years for probation. *Id.*

Petitioner represented himself on direct appeal, arguing that the trial judge was biased against him, there was insufficient evidence to support his convictions, and defense counsel provided ineffective assistance. *See Hester*, 2011 WL 3717051, at *1 n.1. The Delaware Supreme Court affirmed Petitioner's convictions after holding that his first two claims were meritless and that it could not review the third claim because ineffective assistance of counsel claims cannot be considered on direct appeal in Delaware. *Id.* at *3.

On October 12, 2010 and October 29, 2010, Petitioner filed motions to reduce/modify his sentence, asserting, *inter alia*, that the trial judge was biased against him, there was insufficient evidence to support his convictions, the trial court violated his right to be protected against double jeopardy, and defense counsel provided ineffective assistance. (D.I. 54, Commr's Rep. & Rec. in *State v. Hester*, Cr. ID No. 0912010604, at 3 (Del. Super. Ct. Oct. 9, 2012)) The Superior Court denied the two motions to reduce/modify sentence on November 22, 2010. *Id.* Petitioner appealed,

and the Delaware Supreme Court affirmed the Superior Court's judgment. *See Hester v. State*, 16 A.3d 937 (Table), 2011 WL 1167064, at *2 (Del. Mar. 29, 2011).

Petitioner filed three more motions to correct sentence between April 23, 2012 and August 15, 2012. (D.I. 54, Comm'r's Rep. & Rec. in *State v. Hester*, Cr. ID No. 0912010604, at 4 (Del. Super. Ct. Oct. 9, 2012); D.I. 75 at 98-99) The Superior Court denied all three motions. (D.I. 54, Comm'r's Rep. & Rec. in *State v. Hester*, Cr. ID No. 0912010604, at 4 (Del. Super. Ct. Oct. 9, 2012); D.I. 75 at 98-99) Petitioner did not appeal any of those decisions.

On September 19, 2011, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Court Rule 61 ("Rule 61 motion"). (D.I. 75 at 95) The Delaware Superior Court denied the Rule 61 motion on November 21, 2012. (D.I. 75 at 100) Petitioner appealed. On March 12, 2013, the Delaware Supreme Court dismissed the appeal as untimely. *See Hester v. State*, 62 A.3d 1223 (Table), 2013 WL 994062 (Del. Mar. 12, 2013).

Petitioner timely filed the instant habeas Petition and subsequent amended Petition (hereinafter referred to as "Petition"). (D.I. 1; D.I. 17) The State filed an Answer asserting that the Court should deny the Petition because the claims asserted therein are either meritless, procedurally barred, or not cognizable on federal habeas review. (D.I. 52)

## II.    LEGAL STANDARDS

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes

procedural requirements and standards for analyzing the merits of a habeas petition in order to

"prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford*, 538 U.S. at 206.

### B.     Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts
> of the State; or
>
> (B)     (i) there is an absence of available State corrective process; or
>          (ii) circumstances exist that render such process ineffective to
> protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give

"state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also*

*Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement

by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either

on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d

Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of

a claim means that the petitioner must present a federal claim's factual and legal substance to the

4

state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the procedural default and actual prejudice resulting therefrom. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means

5

factual innocence, not legal insufficiency, *see Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt, *see Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002). A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C.    Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied;" as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011).

Finally, when reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 285-86 (3d Cir. 2000). The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013); *but see Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Petitioner appears to assert the following eight grounds for relief in his Petition: (1) he was denied his constitutional right to self-representation; (2) there was insufficient evidence to support his convictions; (3) his sentence constitutes cruel and unusual punishment; (4) the trial judge was biased against Petitioner, which resulted in a denial of his right to due process; (5) his right to be protected against double jeopardy was violated; (6) the State engaged in prosecutorial misconduct; (7) the Indictment was defective; and (8) defense counsel provided ineffective assistance. The Court will discuss each Claim below.[1]

### I.   Claim One: Self-Representation

Petitioner contends that the trial court violated his constitutional right to self-representation by denying his request to dismiss defense counsel after his trial had started. The Delaware Supreme

---

[1]Subsequent to the State's filing of its Answer, Petitioner has filed numerous documents either re-asserting or amplifying the claims asserted in his Petition. (D.I. 69; D.I 84; D.I. 85; D.I. 105; D.I. 115; D.I. 118; D.I. 123; D.I. 126; D.I. 127; D.I. 128; D.I. 129) The Court has reviewed and considered these documents (as well all the documents filed by Petitioner not specifically mentioned here) to the extent they supplement his habeas Claims.

Court denied the argument as meritless, explicitly holding that it found no error in the Superior Court's denial of Petitioner's "untimely and ambiguous attempt to exercise his right to self-representation." *Hester*, 2011 WL 3717051, at *2. Therefore, Petitioner will only be entitled to relief on Claim One if the Delaware Supreme Court's decision was either contrary to, or involved an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent applicable to claims involving the Sixth Amendment right to self-representation is *Faretta v. California*, 422 U.S. 806 (1975), and its progeny. In *Faretta*, the Supreme Court held that a criminal defendant has a Sixth Amendment right to represent himself and, therefore, may affirmatively waive his right to counsel. A criminal defendant's waiver of counsel is only valid if the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835. Pursuant to *Faretta*, a trial court must ensure that a defendant's waiver of counsel is knowing, voluntary, and intelligent before permitting him to proceed *pro se*. *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

Nevertheless, a defendant's right to self-representation is not unqualified. As noted by the Supreme Court, "even at the trial, [], the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000). For instance, an assertion of the right to proceed *pro se* must be made in a timely fashion, and

> after trial has commenced – *i.e.*, at least after the jury has been empaneled – the right of self-representation is curtailed. In that context, district courts have discretion to deny an untimely request to proceed *pro se* after weighing the prejudice to the legitimate interests of the defendant against the potential disruption of proceedings already in progress.

*United States v. Bankoff*, 613 F.3d 358, 373 (3d Cir. 2010).

8

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware

Supreme Court did not specifically apply the *Faretta* standard in affirming the trial court's decision.

Nevertheless, the Court concludes that the Delaware Supreme Court's decision was not contrary to

*Faretta,* because the Delaware cases cited by the Delaware Supreme Court[2] refer to the applicable

precedent. *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's

decision was not "contrary to" clearly established Federal law because it appropriately relied on its

own state court cases, which articulated the proper standard derived from Supreme Court

precedent); *Williams,* 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct

legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably

within § 2254(d)(1)'s 'contrary to' clause.").

Additionally, the Court concludes that the Delaware Supreme Court reasonably applied

*Faretta* in denying Claim One. Prior to trial, Petitioner sought to have defense counsel dismissed

from representing him, but changed his mind during the final case review and opted to continue

with defense counsel. Petitioner made his second request to dismiss defense counsel as his attorney

after his trial had already started, the jury had been selected, and several witnesses had testified. The

trial court denied Petitioner's second request after concluding that such a belated request would be

too prejudicial and disruptive to the trial already in progress. The Delaware Supreme Court

affirmed that decision, explaining:

> Once a trial has begun, the trial court may curtail a defendant's right
> to self-representation. The trial judge considering the motion must
> weigh the legitimate interests of the defendant against the prejudice
> that may result from the potential disruption of the proceedings
> already in progress. Sometimes the defendant's right to represent

---

[2] The Delaware Supreme Court cited to *Stigars v. State,* 674 A.2d 477, 479 (Del. 1996), *Christopher v. State,* 930 A.2d 894, 896 (Del. 2007), and *Zuppo v. State,* 807 A.2d 545, 548 (Del. 2002). *See Hester,* 2011 WL 3717051, at *2 notes 9-11.

> himself may be outweighed by the State's interest in ensuring the
> integrity and the efficiency of the trial.

*Hester*, 2011 WL 3717051, at *2.

Given the timing and manner of Petitioner's second request to proceed *pro se*, and his

previous change of heart, the Court concludes that the Delaware Supreme Court's decision

constituted a reasonable application of *Faretta* and its progeny. Accordingly, the Court will deny

Claim One.

### II. Claim Two: Insufficient Evidence

Next, Petitioner contends there was insufficient evidence to support his conviction for

second degree burglary because: (1) there was no physical evidence linking him to the crime;

(2) Wilkins (his ex-girlfriend) lied about what happened; and (3) he had a right to be in the

apartment they shared. (D.I. 17 at 1-3)  In an attempt to support his argument, Petitioner contends

that there was insufficient evidence to convict him of second degree burglary because the fact that

the jury acquitted him of aggravated menacing demonstrates that he lacked the requisite felonious

intent. (D.I. 17 at 12)  The Delaware Supreme Court denied Petitioner's insufficient evidence

argument as meritless.  Therefore, Petitioner will only be entitled to relief on Claim Two if the

Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly

established Federal law.

The United States Supreme Court precedent governing Petitioner's insufficient evidence

claim is *Jackson v. Virginia*, 443 U.S. 307 (1979).  Pursuant to *Jackson*, "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

This standard "must be applied with explicit reference to the substantive elements of the criminal

offense as defined by state law." *Id.* at 324 n.16.  Additionally, "a federal habeas court faced with a

record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. However, it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id.*

The Delaware Supreme Court's decision was not "contrary to" clearly established Federal law, because the state court cited and applied the *Jackson* standard when it denied the instant Claim. For the following reasons, the Court concludes that the Delaware Supreme Court's rejection of the instant Claim also involved a reasonable application of *Jackson*.

In order to obtain a conviction for second degree burglary, the State was required to establish beyond a reasonable doubt that Petitioner knowingly and unlawfully entered Wilkins' dwelling with the intent to commit a crime therein which, in this case, was either aggravated menacing, offensive touching, or harassment. *See* Del. Code Ann. tit. 11, § 825 (D.I. 54, Trial Transcript June 3, 2010 at 26-28 in Petitioner's Post-Conviction Appeal Letter dated Dec. 18, 2012) However, in Delaware, it is also well-settled that an individual may be convicted solely on circumstantial evidence. *See Seward v. State*, 723 A.3d 365, 369 (Del. 1999). Delaware courts treat circumstantial evidence the same as direct evidence, and draw inferences from that evidence. *Id.*

Moreover, under well-settled Delaware law and Supreme Court precedent, it is for the jury, as the trier of fact, to determine the credibility of the witnesses and resolve any conflicts in the testimony. *See Tyre v. State*, 412 A.2d 326, 330 (Del. 1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

During the trial, Wilkins testified that she kicked Petitioner out of her home approximately two months before the incident in question and that, on December 16, 2009, Petitioner forced his way into her apartment, chased her down, and grabbed her. As he did in his direct appeal, Petitioner

11

contends that Wilkins and other witnesses lied while testifying about these facts. However, since he has not provided any evidence to support this perjury allegation, the Court accepts as correct the Delaware Supreme Court's factual determination that there was no indication that such perjury occurred. Moreover, the fact that the jury acquitted Petitioner of aggravated menacing does not demonstrate that he lacked the requisite intent. The jury convicted him of harassment and offensive touching, and either of those convictions satisfied the intent element of second degree burglary.[3]

Thus, after viewing all of the evidence in a light most favorable to the prosecution, the Court concludes that the Delaware Supreme Court reasonably applied *Jackson* in holding that Wilkins' testimony provided more than sufficient evidence to support Petitioner's convictions. Accordingly, the Court will deny Claim Two.

### III.    Claim Three: Sentence Constitutes Cruel and Unusual Punishment

---

[3] In order to obtain a conviction for aggravated menacing, the State had to establish that Petitioner displayed what appeared to be a deadly weapon to his ex-girlfriend, and that he intentionally placed her in fear of imminent physical injury. (D.I. 54, Trial Transcript June 3, 2010 at 29 in Petitioner's Post-Conviction Appeal Letter dated Dec. 18, 2012) In order to obtain a conviction for harassment, the State had to prove that Petitioner had engaged in any course of alarming or distressing conduct, which served no legitimate purpose and was in a manner in which he knew was likely to cause a reasonable person to suffer emotional distress. (D.I. 54, State's Ans. Br. in Hester v. State, No. 587, 2010, at 17) Finally, in order to obtain a conviction for offensive touching, the State had to prove that Petitioner did intentionally touch Wilkins either with a member of his body or with any instrument, knowing that he was likely to cause offense or alarm to her. (D.I. 54, App. to Appellant's Br. in *Hester v. State*, No. 587, 2010, at A-8) During the trial, Wilkins testified that Petitioner had his hand in his pocket and indicated that he had something in there, while saying "I've got this, I've got this, don't make me use it." (D.I. 54, Trial Transcript June 2, 2010 at 39-40 in Petitioner's Post-Conviction Appeal Letter dated Dec. 18, 2012) While cross-examining the police officer who interviewed Wilkins, defense counsel elicited the police officer's response that Wilkins never said she saw a weapon. (D.I. 54, Trial Transcript June 3, 2010 at 103 in Petitioner's Post- Conviction Appeal Letter dated Dec. 18, 2012) The fact that the jury acquitted Petitioner of aggravated menacing but convicted him of harassment and offensive touching demonstrates that the jury performed its duty of weighing any inconsistencies in the evidence and determining credibility. However, Wilkins' testimony that Petitioner kicked her door down and chased her, and grabbed her was more than sufficient to establish Petitioner's guilt for harassment and offensive touching and, therefore, second degree burglary.

Petitioner appears to contend that the sentence imposed as a result of his habitual offender status constitutes cruel and unusual punishment, because the triggering convictions for that status were ten to twenty years old at the time of his sentencing in this case. Petitioner presented this same argument in several motions to reduce/correct his sentence, all of which the Superior Court denied. The Delaware Supreme Court affirmed the Superior Court's rejection of the argument after determining that it lacked merit. *See Hester*, 2011 WL 1167064, at *1.

The Eighth Amendment forbids cruel and unusual punishment, and it applies to the States via the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 667 (1962). Two decisions of the United States Supreme Court summarize the applicable Eighth Amendment principles for non-capital sentencing: *Lockyer v. Andrade*, 538 U.S. 63 (2003), and *Ewing v. California*, 538 U.S. 11 (2003). In *Lockyer*, the Supreme Court extensively reviewed its prior cases dealing with Eighth Amendment challenges to criminal sentences and concluded they had "not established a clear and consistent path for courts to follow" in determining whether a particular sentence for a term of years can violate the Eighth Amendment. *Lockyer*, 538 U.S. at 72. The *Lockyer* Court explained that, for the purposes of analyzing an Eighth Amendment claim under § 2254(d)(1), the only clearly established governing legal principle is that "the gross disproportionality principle, the precise contours of which are unclear, [is] applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 539 U.S. at 72. Consequently, the *Lockyer* Court held that a recidivist's minimum sentence of fifty years was not grossly disproportionate to the two counts of petty theft offenses that triggered the application of the recidivist statute. *Id.* at 67, 77.

In *Ewing*, the Supreme Court rejected the defendant's claim that a sentence of twenty-five years to life for stealing three golf clubs was "grossly disproportionate" to the crime. *See Ewing*, 538 U.S. at 20, 28. The *Ewing* Court reiterated that the Eighth Amendment "contains a 'narrow

13

proportionality principle' that 'applies to noncapital sentences,'" which "does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 20, 23. *Ewing* explained that a court engaging in the proportionality analysis must compare the harshness of the penalty imposed upon the defendant with the gravity of his triggering offenses and criminal history. *Id.* at 28-29. "In weighing the gravity of [the defendant's] offense, [the court] must place on the scales not only his current felony, but also his long history of felony recidivism." *Id.* at 29.

After reviewing Claim Three within the foregoing framework, the Court concludes that the Delaware Supreme Court's rejection of Petitioner's Eighth Amendment claim and affirmance of his sentence was neither contrary to, nor an unreasonable application of, the gross disproportionality standard as articulated in *Lockyer* and *Ewing*. Petitioner was sentenced as a habitual offender to a total of fourteen years and nine months at Level V, to be suspended after serving twelve years for probation. Eight of those years were the minimum mandatory, and the possible maximum sentence was life imprisonment. (D.I. 54, State's Motion to Affirm in *Hester v. State*, No. 775, 201 at 4); *see also* Del. Code Ann. tit. 11, § 4214(a)) In denying Petitioner's cruel and unusual punishment argument, the Delaware Supreme Court concluded that the sentence did not exceed the statutory maximum and was not imposed on the basis of false information. Petitioner's prior convictions included stalking, violating a restraining order, terroristic threats, and theft by unlawful taking. (D.I. 54, Response to Letter in *Hester v. State*, ID 48821994, filed Jan. 9, 2013, at Exh. D) As noted by the State during sentencing, Petitioner's criminal history also included carjacking and kidnapping, and the victims of his prior repetitive criminal conduct were a wife and a former girlfriend. (D.I. 54, Sentencing Transcript dated Sept. 9, 2010, at 5) Notably, Petitioner does not challenge the veracity of the information regarding his conviction history, but rather, he challenges the use of those

14

convictions because they are so "old." Given these circumstances, the Court cannot conclude that the fourteen year sentence was grossly disproportionate to his offenses. Accordingly, the Court will deny Petitioner's Eighth Amendment Claim as meritless.

### IV.     Claim Four: Judicial Bias/Due Process Violation

Next, Petitioner contends that the sentencing judge was prejudiced against him because Petitioner is a black male and Wilkins is a white female. (D.I. 17 at 6) Petitioner also appears to allege that the sentencing judge's bias caused her to improperly rely on false information from the State regarding petitioner's prior criminal history, thereby violating his due process rights. (D.I. 17 at 10) When it affirmed the Superior Court's denial of Petitioner's motions to reduce sentence, the Delaware Supreme Court denied this argument as meritless, after determining that Petitioner's "conclusory allegations concerning the Superior Court's motivations for sentencing him as it did [are not] adequate to support a claim that his sentences were imposed on the basis of false information." *Hester*, 2011 WL 1167064, at *1.

In this proceeding, Petitioner has alleged no facts to support his speculative assertion that his sentence was motivated by racial bias. Nothing in the sentencing hearing transcript or the rest of the record even remotely suggests that the sentencing judge suffered from any discriminatory feelings toward Petitioner. In turn, although it is well-settled that sentences based on materially false assumptions violate due process,[4] Petitioner's conclusory allegations do not demonstrate that his sentence, which was well within the statutory limits, was based on any false assumptions. Therefore, the Court will deny Claim Four as meritless.

### V.   Claims Five and Six: Double Jeopardy and Prosecutorial Misconduct

In Claim Five, Petitioner contends that his conviction for second degree burglary as a lesser

---

[4] *See Townsend v. Burke*, 334 U.S. 736, 740-41 (1948); *United States v. Tucker*, 404 U.S. 443, 446 (1972).

included offense of first degree burglary violated his right to be protected against double jeopardy. Although not entirely clear, Petitioner appears to view the State's act of amending the Indictment from charging first to second degree burglary as somehow being akin to an acquittal on the first degree burglary charge. (D.I. 59 at 12-14)  In Claim Six, Petitioner contends that the State engaged in prosecutorial misconduct during closing argument by stating that Petitioner "dragged" Wilkins from room to room.

The record reveals that Petitioner failed to exhaust state remedies for these two claims. First, Petitioner did not present these arguments in his direct appeal to the Delaware Supreme Court.  Second, although Petitioner presented these claims (or variations of these claims) to the Superior Court in his Rule 61 motion and possibly to the Delaware Supreme Court in his post-conviction appellate brief, the Delaware Supreme Court denied the Rule 61 appeal for being untimely.  As such, Petitioner's attempt to appeal the denial of his Rule 61 motion did not exhaust state remedies for Claims Five and Six, because he did not "fairly present" these claims to the Delaware Supreme Court in a manner permitting that state court to address the claims on their merits.

In addition, by denying Petitioner's post-conviction appeal as untimely under Delaware Supreme Court Rule 6(a)(iii), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-64 (1984), that its decision rested on state law grounds.  At this juncture, any attempt by Petitioner to obtain further state court review via a new Rule 61 motion would be time-barred under Rule 61(i)(1), as well as procedurally defaulted under Rule 61(i)(3). Consequently, Claims Five and Six are procedurally defaulted, meaning that the Court cannot review the merits of the Claims absent a showing of cause and prejudice, or a showing that a miscarriage of justice will result absent such review.

16

Petitioner attempts to establish cause for his procedural default under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), by asserting that he was unconstitutionally denied representation by counsel during his Rule 61 proceeding. (D.I. 59 at 5) This attempt is unavailing. In *Martinez*, the Supreme Court held for the first time that the absence of counsel or the inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner=s procedural default of a claim of ineffective assistance of trial counsel. *Id.* at 1320. Since Claims Five and Six do not allege ineffective assistance of counsel, the narrow exception to the procedural default doctrine under *Martinez* does not apply. Petitioner does not assert any other reason for his default of these claims. Therefore, Petitioner has failed to demonstrate cause for his procedural default of Claims Five and Six.

In the absence of cause, the Court does not need to address the issue of prejudice. Moreover, Petitioner has not provided new reliable evidence of his actual innocence warranting the application of the miscarriage of justice exception to the procedural default doctrine. Accordingly, the Court will deny Claims Five and Six as procedurally barred from Federal habeas review.

## VI.     Claim Seven: Improper Indictment

In Claim Seven, Petitioner contends that the Indictment was improper for two reasons. First, he argues that the Superior Court erred in permitting the State to amend the original Indictment to change the charge from first to second degree burglary, because that substantive change was not considered by the grand jury. (D.I. 8 at 16, 37, 44; D.I. 17 at 3) However, it is well-settled that "the legality of an amendment to an indictment is primarily a matter of state law,"[5] because the Fifth Amendment right to a grand jury indictment does not apply to State criminal prosecutions. *See Apprendi v. New Jersey*, 530 U.S. 266, 272 (1994); *Hurtado v. California*, 110 U.S. 516

---

[5] *United States ex. rel Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975).

(1884). In Delaware, an indictment can be amended at any time before a verdict to charge a defendant with a lesser-included offense. *See* Del. Super. Ct. Crim. Rule 7(e); *Shockley v. State*, 854 A.2d 1159 (Table), 2004 WL 1790198, at *2 (Del. Aug. 2, 2004). In turn, claims based on errors of state law are not cognizable on federal habeas review, and federal courts cannot re-examine state court determinations on state law issues. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Taylor*, 277 F.3d 261, 310 n.8 (3d Cir. 2001). Having reviewed the amendment of the Indictment within the foregoing legal framework, the Court concludes that this first sub-argument of Claim Seven does not assert an issue cognizable on Federal habeas review.

Second, Petitioner contends that his initial Indictment was defective because it was not signed. Petitioner never presented this argument to the Delaware Supreme Court, either on direct appeal or post-conviction appeal. Any attempt to assert this argument in a new Rule 61 motion would be time-barred under Rule 61(i)(1). Therefore, the Court must treat this sub-argument as exhausted but procedurally defaulted.

Petitioner does not assert any cause for his default of his second sub-argument, and his default of the sub-argument is not excused under the narrow *Martinez* exception to the procedural default doctrine because it does not sound in ineffective assistance. In the absence of cause, the Court does not need to address the issue of prejudice. Nevertheless, Petitioner cannot demonstrate that he was prejudiced by the absence of a foreman's signature on the original Indictment, because the Indictment specifically identifies his charges, cites the applicable sections of the Delaware Code, recites the elements of the crimes, and identifies the victim, date, and other circumstances of his charged offenses. (D.I. 54, App. to Appellant's Brief in *Hester v. State*, No. 587, 2010, at A-7 to A-9) Simply stated, Petitioner was not prejudiced – he had sufficient notice of the charges against him, and the Indictment provided sufficient information to enable him to plead an acquittal or conviction

in the event any other proceedings are taken against him for a similar offense. *See Russell v. United States*, 369 U.S. 749, 763-64 (1962) (sufficiency of indictment is measured by two criteria: (1) "whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet;" and (2) "whether the record shows with accuracy to what extent he may plead a former acquittal or conviction"). Finally, Petitioner's default of the second sub-argument of Claim Seven cannot be excused under the miscarriage of justice exception, because he has not provided any new reliable evidence of his actual innocence.

For all of these reasons, the Court will deny the first sub-argument in Claim Seven because it does not assert an issue cognizable on Federal habeas review and the second sub-argument as procedurally barred from Federal habeas review.

### E. Claim Eight: Ineffective Assistance of Counsel

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v.*

*Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Throughout his extensive filings, Petitioner asserts numerous statements concerning defense counsel's alleged ineffective assistance, which can be divided into the following categories: (1) ineffective assistance during the pre-trial stage; (2) ineffective assistance during the trial; and (3) ineffective assistance during the post-conviction stage. Petitioner presented all but one of the arguments to the Superior Court in his Rule 61 motion, and the Superior Court denied them as meritless. As previously discussed, although Petitioner filed a post-conviction appeal, the Delaware Supreme Court dismissed that appeal as untimely. Consequently, all of the sub-arguments in Claim Eight are procedurally defaulted, which means that the Court cannot review the merits of the three sub-arguments absent a showing of cause and prejudice.

Even though the arguments in Claim Eight are premised on the ineffective assistance of trial counsel, and Petitioner was not represented by counsel during his Rule 61 proceeding, the narrow *Martinez* exception to the procedural default doctrine does not provide Petitioner with a method of establishing cause for his procedural default. As previously explained, *Martinez* provides that the absence of counsel or the inadequate assistance of counsel *during an initial-review state collateral proceeding* may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *See Martinez*, 132 S.Ct. at 1320; *see also Trevino v. Thaler*, 133 S.Ct. 1911, 1918, 1921 (2013); *Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) ("*Martinez* made very clear that its exception to the general rule of *Coleman* applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals."). Here, Claim Eight was presented in Petitioner's initial collateral review proceeding, and was only waived on

20

collateral appeal. Therefore, *Martinez* is inapplicable, and the fact that Petitioner was not represented by counsel during his Rule 61 proceeding does not establish cause for his default.

In order to satisfy the prejudice portion of the "cause and prejudice" standard of the procedural default doctrine, a petitioner must demonstrate prejudice under *Coleman*, 501 U.S. at 750. When the underlying claim is for ineffective assistance of counsel, the standard for demonstrating prejudice sufficient to overcome a procedural default is whether there is a reasonable probability that, but counsel's errors, the result of the proceedings would have been different. *See Werts*, 228 F.3d at 193; *see also Strickland*, 466 U.S. at 694. The Court liberally construes Petitioner's reference to defense counsel's conflict of interest as an attempt to establish that the prejudice portion of the cause and prejudice test should be presumed. (D.I. 17 at 76; D.I. 59 at 26, 28) Thus, even though Petitioner's failure to establish cause eliminates the Court's need to determine prejudice, the Court will briefly address the issue.

In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Supreme Court explained that the prejudice required by *Strickland* can be presumed if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 350. *Cuyler* and subsequent Supreme Court jurisprudence regarding actual conflicts of interest arose in the context of an attorney's representation of multiple clients, where "the conflict exists between the interests of one defendant and the interests of other defendants served by the same attorney." *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984). However, in 1983, the Third Circuit expressly extended *Cuyler* to conflict of interest cases other than those arising in the multiple representation context, such as when counsel's personal interests are "'inconsistent, diverse, or otherwise discordant' with those of his client and [those interests] affected the exercise of his professional judgment on behalf of his client." *Zepp*, 748

21

F.2d at 135. As explained by the Third Circuit, an "actual conflict" arising from defense counsel's active representation of conflicting interests is established by showing (1) some plausible alternative defense strategy might have been pursued, and (2) the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *See United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999). Although the Supreme Court questioned the applicability of *Cuyler* to conflicts arising outside the context of multiple representation in its 2002 decision *Mickens v. Taylor*, opining that it remains an open question whether *Cuyler* should be extended to other kinds of conflict of interest cases,[6] the Third Circuit has not addressed the effect of *Mickens* on its holding in *Zepp*. Therefore, the Court assumes that *Zepp*'s extension of *Cuyler*'s doctrine regarding actual conflicts of interest applies in Petitioner's case.

In any case, Petitioner's *Cuyler* argument for presuming prejudice is unavailing. First, the fact that Petitioner filed a civil suit against defense counsel during his state criminal proceeding does not, on its own, demonstrate that an actual conflict of interest existed or adversely affected defense counsel's performance. The record indicates that defense counsel was not even aware of the civil suit until Petitioner mentioned it more than halfway through the presentation of the State's case at trial. (D.I. 2 at 149) In turn, after discussing the issue and the fact that Petitioner had filed a motion to dismiss counsel during the pre-trial phase but withdrew the motion at the case review, the trial judge stated:

> First of all, the fact that you claimed ineffective assistance of counsel does not create a *per se* conflict of interest. There have been plenty of times where the Court has denied a motion to fire an attorney because a defendant who is in trial has claimed he is ineffective. Procedurally, we are underway. We have selected a jury. We have had the witnesses. We have more witnesses. And it would be a great disruption of the criminal case management and of this trial and of the jurors' lives and many other people's lives to allow you to now discharge [defense counsel]. And the only option would be for you to proceed pro se, which I don't think you're

---

[6] *Mickens v. Taylor*, 535 U.S. 162, 175-76 (2002).

ready to do. And I'm not going to grant a mistrial and start this over.

You had an obligation. You knew as of May 19th that you have this problem. You had an obligation to bring it up before we picked the jury. You did not. And I am not going to allow you to discharge [defense counsel] now. We are underway. It would be too disruptive. So your objection is noted. I understand your concerns but we're moving forward.

\* \* \*

I am denying your oral motion to dismiss current counsel. I'm ordering [defense counsel] to continue to represent you.

(D.I. 2 at 150) Petitioner then asked, "So you feel as though now even though this is out in the open and for the record that I'm going to be represented correctly and held bias over what transpired between us two?" (D.I. 2 at 151) The judge responded, "[Defense counsel] is obligated under the rules of professional responsibility to zealously defend you, and I trust he will do that as an officer of this Court." (D.I. 2 at 151)

This record demonstrates that the trial judge found as a matter of fact that there was no actual conflict of interest. Additionally, the Court notes that the civil suit that Petitioner filed was dismissed as frivolous on September 13, 2010. *See Hester v. O'Neill*, Mem. & Order (D. Del. Sept. 23, 2010). Petitioner has not provided anything in this proceeding to rebut the Superior Court judge's factual finding that Petitioner's act of filing a civil suit against defense counsel did not create a conflict of interest. Therefore, the Court concludes that defense counsel was not operating under a conflict of interest as a result of Petitioner's filing of a federal civil suit. *See e.g. Winfield v. Roper*, 460 F.3d 1026, 1040 (8th Cir. 2006) (holding that defendant's civil lawsuit against defense counsel does not *per se* create actual conflict).

Moreover, even if the Court were to presume there was a conflict of interest, Petitioner has failed to demonstrate that the conflict adversely affected defense counsel's performance. Petitioner has not provided some plausible alternative defense strategy that defense counsel could have

23

pursued but did not because it was inherently in conflict with defense counsel's other interests. Thus, the Court concludes the *Cuyler* exception is inapplicable, and prejudice cannot be presumed.

Since Petitioner has not demonstrated cause and prejudice, the only way in which Claim Eight can be reviewed on the merits by this Court is if Petitioner were to demonstrate that a failure to do so will result in a miscarriage of justice. The miscarriage of justice exception to the procedural default doctrine is unavailable here, because Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Eight as procedurally barred from Federal habeas review.

## IV.   PENDING MOTIONS

Petitioner filed the following Motions during the pendency of this case: (1) Motion to Dismiss Conviction and Indictment (D.I. 110); (2) Motion to Appoint Counsel (D.I. 111); (3) Motion to Compel Evidentiary Hearing or Bail (D.I. 112); (4) Motion to Set Appeal Bail (D.I. 117); (5) Motion for Court to Render Decision (D.I. 119); and (6) Motion to Expedite (D.I. 120). Having determined that the instant Petition does not warrant relief, the Court will deny all of these Motions as moot.

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the

24

Court's view, reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the reasons discussed, the Court will deny Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 without an evidentiary hearing.  An appropriate Order will be entered.